**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:22-CR-000101-OAW |
| | : | |
| v. | : | |
| | : | |
| MOHAMED NAJM KAMASH | : | August 2, 2024 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government submits this memorandum in aid of the sentencing of Mohamed Najm Kamash, scheduled for August 14, 2024, and in response to the Defendant's Memorandum in Aid of Sentencing filed on July 26, 2024. ("Defendant's Sentencing Memorandum").  Doc. No. 93. Mr. Kamash was charged with one count of making a false statement in a naturalization proceeding, in violation of 18 U.S.C. § 1015.  Doc. No. 14. On May 6, 2022, Mr. Kamash was arrested and detained, *see* Doc. Nos. 5-7, and on June 30, 2022, he was released on conditions. Doc. No. 32.

On March 25, 2024, the defendant pleaded guilty, pursuant to a written plea agreement (the "Plea Agreement"), to the sole count charged in the indictment. Doc. No. 81. Mr. Kamash further stipulated to certain offense conduct, specifically that he knowingly made a false statement (while under oath) during a naturalization proceeding conducted before the Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"). Plea Agreement at 9.

Simply put, the defendant knowingly lied about his knowledge that his brothers had been involved with a terror organization in Iraq. The Government respectfully submits that an appropriate sentence in this case would fall within the agreed-upon Guidelines range, 0 to 6 months of imprisonment.

## I.    BACKGROUND

The basic and uncontested[1] facts are accurately summarized at paragraphs 10-35 of the Presentence Report ("PSR").  Doc. No. 91.

Mr. Kamash sought refuge in the United States. PSR ¶ 70. Undoubtedly, as Mr. Kamash described in his Sentencing Memorandum, his childhood in Iraq was marred by war, trauma, and poverty. *See* Defendant's Sentencing Memorandum. Mr. Kamash made the choice to emigrate to the United States, specifically New Haven, Connecticut, and entered the country in 2014. PSR ¶ 70. His two younger brothers, Ahmed and Ali, chose a different path. Both joined a terror organization recognized by the United States Department of State, the Islamic State of Iraq and al-Sham ("ISIS"). PSR ¶¶ 18, 27-30, 35-37. As evidenced through his own communications with his brothers, Mr. Kamash knew that both of his brothers were ISIS members. *Id*.

On August 17, 2021, Mr. Kamash lied to USCIS officials, while under oath – he claimed he had never known anyone involved with a terror organization, and that no person in his family had been involved with a terror organization. PSR ¶ 19. He submitted immigration form N-400 stating the same. PSR ¶ 14-18. That was not true. Mr. Kamash knew it was not true. In 2014, his brother Ahmed stated plainly to Mr. Kamash, "I joined ISIS, and they gave me this pistol." PSR ¶ 27. Mr. Kamash's family (including his siblings Noha and Abdilla, who provided letters of support) communicated on group message threads in 2017 and 2018 that traded photographs of Ahmed with firearms and wearing ISIS iconography. PSR ¶ 31-34. Mr. Kamash's brother Ali, in 2016, told Mr. Kamash that like Ahmed, he too was to join ISIS. PSR ¶ 36.

---

[1] Through counsel, Kamash submitted certain "objections, clarifications, and comments to the PSR." Doc. No. 91-2.

Mr. Kamash sought the benefits conferred through naturalization and citizenship in the United States. He owed a duty of candor to USCIS and swore to tell the truth. His deceit prevented a full evaluation of his citizenship application. A potential association with a terror organization (or with those involved with a terror organization) is a serious matter, weighs upon the safety and national security of the nation, and warrants fulsome investigation and consideration as part of any naturalization process. But Mr. Kamash made the choice to lie to the Government. He must be held accountable for the offense and while he now accepts responsibility for his actions, his false statements to USCIS remain a serious offense.

## II.   STATUTORY AND GUIDELINES EXPOSURE

### A.   <u>Statutory Exposure</u>

Based on his plea of guilty to violation of 18 U.S.C. § 1015, the defendant faces a maximum term of imprisonment of 5 years, a term of supervised release of not more than years, a maximum fine of $250,000, and a special assessment of $100.  PSR ¶¶ 95, 101, 107-08.

### B.   <u>Guidelines for the Instant Offense</u>

The parties acknowledged, pursuant to the Plea Agreement dated March 25, 2024, the following Guideline Stipulation: the defendant's base offense level under U.S.S.G. § 2L2.2 is 8. Plea Agreement at 4.  Two levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in offense level of 6. *Id*. The defendant further qualifies for a two-level reduction for "certain zero-point offenders" under U.S.S.G. § 4C1.1, which would further reduce the defendant's total offense level to 4. *Id*. The parties also agree that defendant falls within Criminal History Category (CHC) I. *Id*.

The PSR contemplates the same total offense level and CHC.  PSR ¶¶ 45-53, 58.  A CHC I and a total offense level of 4 produces a range of imprisonment of 0 to 6 months of imprisonment and a term of supervised release of not more than three years.  PSR ¶¶ 87, 92.

### C.    Parties' Agreement Regarding Departures and Non-Guidelines Sentence

The parties agreed in the Plea Agreement that neither a downward nor an upward departure from the sentencing range set forth [in the Plea Agreement] is warranted and that a sentence within [the Guidelines range of 0 to 6 months of imprisonment] is reasonable. Plea Agreement at 4. The defendant also agreed that he would not appeal or collaterally attack his sentence if it does not exceed 2 months of imprisonment, a three-year term of supervised release, a $100 special assessment, and a $9,500 fine.  *Id*. at 6.  Kamash further understands that his plea and sentence may (or may not) have collateral immigration consequences. *Id*. at 6.

## III.   LEGAL STANDARD

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence."  *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006).  The § 3553(a) factors include:

(1) "[T]he nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a). The Second Circuit reviews a sentence for reasonableness. *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id*.

This case involves a fist-time offender, Mr. Kamash, who committed a serious offense, lying during his naturalization proceeding about his associations with those involved with a terror organization (his brothers). His lies prevented USCIS and the Government from fully evaluating Mr. Kamash's application for naturalization, and hindered their ability to assess his brothers' ties to a terror organization as it related to his naturalization application. In the Government's view, a thorough review of the § 3553(a) factors counsels that a sentence within the agreed-upon Guidelines range—followed by a period of supervised release, would be just, appropriate, and "sufficient, but not greater than necessary, to comply with [§ 3553(a)'s] purposes."

## IV. DISCUSSION

Applying the relevant factors to this case:

### A. Seriousness of the Offense and Protection of the Public

A sentence within the Guidelines range of imprisonment would underscore the seriousness of the offense while also protecting the public, two concepts outlined under 18 U.S.C. § 3553(a). False statements made during immigration proceedings, particularly those related to associations with terror organizations, are quite serious. Society deserves that those who attempt to lawfully enter the United States, in order to ensure the protection of the public, are truthful so that naturalization or citizenship determinations can be made to ensure status is not granted to an individual who could present a risk to the United States and its citizens.

### B. Deterrence

Under 18 U.S.C. § 3553(a)(2)(B), the Court may consider a sentence's deterrent effect. A sentence within the Guidelines range would signal the seriousness of the offense. While it is unlikely (based on the nature of violation) that Mr. Kamash would recidivate, the Court's sentence should reflect the need to deter others from making false statements during immigration proceedings – particularly related to topics that weigh on the safety and national security of the United States. The public will be deterred only if such violations (the making of false statements to immigration officials) may result in the imposition of sentences of imprisonment.

### C. History and Characteristics of the Defendant

Mr. Kamash's history and characteristics show he has accepted responsibility for his actions, which the Government recognizes. PSR ¶ 43. *See also* Doc. No. 93-1. He has no prior criminal history. PSR ¶¶ 55-61. Mr. Kamash is currently employed and has been consistently employed since 2014. PSR ¶¶ 88-89. He contributes financially to his family members, including his wife

and son.  PSR ¶¶ 79, 91. As a result of this case, Mr. Kamash has been unable to travel to Turkey to see his two-year old son. PSR ¶ 76. Mr. Kamash has community ties to New Haven and has received services from the Integrated Refugee and Immigrant Services ("IRIS") in New Haven. PSR ¶ 5. Notably, Mr. Kamash has complied with the conditions of his pretrial release upon his release in May 2022. The Government agrees with Probation that, in addition to IRIS services, Mr. Kamash may benefit from educational and occupational services. PSR ¶ 119, 121. Surely the Court will consider Mr. Kamash's history and characteristics, along with the other § 3553(a) factors, against the seriousness of the offense.

V.    **CONCLUSION**

Any sentence imposed by the Court is the result of Mr. Kamash's own choices, including his choice to lie to USCIS. The Government is sympathetic to the defendant's difficult youth.  It is also encouraged by Mr. Kamash's demonstrated involvement in the community through IRIS, and his potential to be a productive member of society and the workforce.  However, those sentiments simply cannot overshadow the seriousness of his offense. Mr. Kamash knowingly lied during his naturalization proceeding. He lied about a serious subject, that his brothers were members of a terror organization.  Accordingly, when considering the factors outlined in Section 3553(a) and the context and relevant conduct surrounding this offense, the Government respectfully submits that a reasonable sentence, which is sufficient but not greater than necessary to satisfy the objectives of federal sentencing, would fall within the agreed-upon Guidelines range (0 to 6 months of imprisonment), followed by a period of supervised release.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

 */s/ Patrick Doherty*
PATRICK DOHERTY
ASSISTANT U.S. ATTORNEY
Fed Bar No. PHV10400
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: (203) 821-3700